363 So.2d 678 (1978)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General and Representative R. Harmon Drew and B. F. O'Neal
v.
The CITY OF NEW ORLEANS, Moon Landrieu, Terrence Dubernay and Henry Simmons.
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General
v.
The Honorable Judges George C. CONNOLLY, Jr., Adrian G. Duplantier, Thomas A. Early, Jr., Richard J. Garvey and Henry J. Roberts, Jr., in their official capacity as Judges for the Civil District Court for the Parish of Orleans, and the Honorable Judges Israel M. Augustine, Jr., Alvin V. Oser, Frank J. Shea, Charles R. Ward and Jerome M. Winsberg, in their official capacity as Judges for the Criminal District Court for the Parish of Orleans, and the Honorable Judges Joan B. Armstrong, Edward G. Gillin and Salvadore T. Mule, in their official capacity as Judges for the Juvenile Court for the Parish of Orleans.
Nos. 62246, 62247.
Supreme Court of Louisiana.
October 9, 1978.
Rehearings Denied November 9, 1978.
*679 William J. Guste, Jr., Atty. Gen., Donald Ensenat, Asst. Atty. Gen., La. Dept. of Justice, for plaintiffs-applicants in Nos. 62246 and 62247.
George C. Connolly, Jr., et al. in pro. per. for defendant-respondent in No. 62246.
Salvador Anzelmo, Acting City Atty., Thomas P. Anzelmo, Sr., Asst. City Atty., for defendants-respondents in No. 62246 and 62247.
Frank J. Shea, in pro. per., defendant-respondent in No. 62246 and 62247.
DIXON, Justice.
This litigation was engendered when the New Orleans City Council adopted Ordinance No. 6265 M.C.S. on February 17, 1977. On May 6, 1977 the plaintiffs sought declaratory and permanent injunctive relief (our No. 62246), alleging that the ordinance was unconstitutional because it conflicted with R.S. 13:691(C). The City of New Orleans, its mayor, administrative and finance officers were named defendants. After the State requested a preliminary injunction, the trial court set a hearing to determine whether a preliminary injunction should issue. All defendants filed exceptions of improper cumulation of actions, unauthorized use of summary proceedings, and no cause of action, as well as exceptions of no right of action as to Harmon Drew and B. F. O'Neal. On June 30, 1977 the district court maintained the exception of no right of action as to the two State Representatives, Drew and O'Neal, and held:
"(2) Ordinance No. 6265 of the City of New Orleans is hereby declared to be constitutional, not in conflict with, but rather in furtherance of the State Statute R.S. 13:691(c).
(3) The injunctive relief sought by the plaintiff, State of Louisiana, seeking to prohibit the City of New Orleans and its designated officials from further implementing or enforcing said Ordinance No. 6265 or making payment thereunder to judges is hereby denied."
The State sought supervisory writs from this court but was denied on the ground that its "remedy (was) by an expedited hearing in the Court of Appeal." Guste v. City of New Orleans, 349 So.2d 330 (La. 1977). Thereafter the parties stipulated the issues for appeal and submitted the case to the Fourth Circuit. On December 3, 1977 the Court of Appeal affirmed the decision, Guste v. City of New Orleans, 353 So.2d 1117 (4th Cir. 1977), and the State applied for a writ of certiorari, or, alternatively, for supervisory writs, from this court on January 9, 1978. On January 27, 1978 this court declined to consider the application because it was deemed untimely. Guste v. City of New Orleans, 354 So.2d 1374 (La.1978). On February 28, 1978 plaintiffs-relators filed a motion in the district court for a permanent injunction, and a rule to show cause was set *680 for March 17, 1978. The City of New Orleans and individual defendants filed exceptions of res judicata, no cause of action and unauthorized use of summary proceedings. By judgment dated March 20, 1978 the district court maintained the exception of res judicata, denied the injunction and dismissed the case. On May 12, 1978 plaintiffs sought supervisory writs to stay the trial court judgment and to grant an injunction, and a writ was granted on June 2, 1978. Guste v. City of New Orleans, 359 So.2d 199 (La.1978).
On March 23, 1978 the plaintiff filed a second suit in district court alleging that the ordinance was unconstitutional, since it conflicted with R.S. 13:691(C), and seeking a permanent injunction. Named as defendants were all the judges of Orleans Parish who were receiving reimbursements under the ordinance. The City of New Orleans intervened in the litigation as a party defendant and filed exceptions of collateral estoppel and res judicata. Three judges thereafter filed similar exceptions and Judge Shea, who had intervened in the previous suit, excepted on grounds of lis pendens and res judicata. On April 28, 1978 the civil district court maintained the exception of no cause of action as to all parties and maintained Judge Shea's exception of res judicata. Supervisory writs were granted upon plaintiff's application.
The initial issue confronting us is to determine whether the decision of the appeal court in Guste v. City of New Orleans, 353 So.2d 1117 (4th Cir. 1977), is a final judgment such that an exception of res judicata was properly maintained when the State filed once again in the district court. C.C. 3556(31) provides:
"Thing AdjudgedThing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal."
C.C.P. 2083 provides:
"An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, and from an interlocutory judgment which may cause irreparable injury."
This determination in turn depends upon the effect ascribed to the first decision of the district court in that case.
A party aggrieved by a judgment granting or denying a preliminary injunction is entitled to an appeal under Louisiana law and jurisprudence. C.C.P. 3612; Morris v. Transtates Petroleum, Inc., 258 La. 311, 246 So.2d 183 (1971). At the time that this litigation was on appeal, a judgment of a court of appeal became final and executory if an application for rehearing was not timely filed.[1] C.C.P. 1841, 1842, 2167. Therefore, the pertinent inquiry becomes to determine what issues were encompassed in the district court's decision which the Fourth Circuit subsequently affirmed.
Although the issues presented at the hearing on the rule nisi usually involve only the mover's right to cause the preliminary injunction to issue, decisions rendered by Louisiana courts have recognized the parties' right to agree that the matter be taken on the merits at the hearing on the application for a preliminary injunction. American Bakeries Co. v. Louisiana State Board of Health, 185 La. 959, 171 So. 90 (1936); Southwest Sales and Manufacturing Co. v. Delta Express, Inc. and D. E. Lester, 342 So.2d 281 (La.App.3d Cir. 1977), writ den. 345 So.2d 48 (La.1977); Springlake Homeowners Assn. v. Pecot, 321 So.2d 789 (La. App.4th Cir. 1975). In Southwest Sales, supra, the court noted the effect of a judgment rendered in this context:

*681 ". . . we think it to be equally well settled that where a judgment denying a preliminary injunction after a hearing on the rule also passes on the merits of the case and effectively disposes of all issues presented by the pleadings such judgment is a final judgment. . . ."
. . . . .
". . . The said judgment being final and no appeal having been taken therefrom same is now res judicata . . ." 342 So.2d at 284, 285.
The record in the case before us shows that the entire case was submitted to the district judge, despite the designation of the hearing as a hearing on the application for a preliminary injunction. For example, on June 23, 1977, an Assistant Attorney General, in correspondence to the district judge, referred to the June hearing as a "hearing on the merits." Both parties extensively briefed and argued all the issues at the hearing on the rule to show cause. Judge Duran's reasons for judgment dealt extensively with the merits of the case and touched only tangentially on the propriety of issuing a preliminary injunction. After judgment the State sought appellate review of the decision on the merits and not on the propriety of the court's passing on any issue other than whether a preliminary injunction should issue. Finally, when the case was on appeal to the Fourth Circuit Court of Appeal, the parties entered into a stipulation "that the issue herein is the interpretation of R.S. 13:691(C) vis-a-vis Ordinance 6265 M.C.S." These factors demonstrate that the parties understood that all issues would be decided on the merits at the hearing, that the judgment of the district court was a judgment on the merits, and that its affirmance by the appeal court was, after the delays for appeal had lapsed, a final judgment which would have the force of res judicata. We therefore affirm the ruling of the district court in Guste v. City of New Orleans insofar as it maintained the exception of res judicata.
In Guste v. Judges (our No. 62247), the district court sustained exceptions of no cause of action as to all parties and an exception of res judicata as to Judge Shea, who had intervened in the previous litigation (our No. 62246). Judge Shea's intervention had placed him on the side of the defendants; he prayed simply that plaintiffs' demands be rejected.
Article 2286 of the Louisiana Civil Code of 1870 provides:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
The requirement of identity of parties requires little explanation. Judge Shea, an intervenor in the first suit, is named a party defendant in the second. The identity of cause is uncontested by the State, for it is clear that the State's demand is based upon the alleged unconstitutionality of Ordinance 6265 M.C.S. for conflicting with R.S. 13:691(C).
With respect to the identity of the object of the suit or demand, the State argues that the present suit is one for an injunction against the judges from receiving payments under Ordinance 6265. The demand in Guste v. City of New Orleans, says the State, was for a declaratory judgment of unconstitutionality and an injunction against the City's paying the funds to the judges. This argument lacks merit. The object of both suits is to obtain a judgment holding the ordinance unconstitutional and prohibiting the receipt by Orleans judges of supplemental pay in violation of the statute. The fact that the first suit sought to enjoin the City from paying and the second suit sought to enjoin the judges from receiving the supplemental pay is too fine and technical a distinction on which to permit the relitigation of the same thing between the same parties. To decide the object of the demand the court should not be limited to an examination of the prayer in the pleadings; the court should determine what were the matters actually litigated and decided. See Planiol, Vol. 2, Pt. *682 1, No. 54A (5) and (6), La.Law Inst. Translation, 1959.
Therefore, the judgment maintaining the exception of res judicata as to Judge Shea is sustained.
The judgment of the district court, in addition to sustaining the exception of res judicata filed by Judge Shea, pretermitted a ruling on the exception of collateral estoppel filed by the other judges, having sustained their exception of no cause of action, dismissing plaintiff's suit. In his reasons for sustaining the exception of no cause of action, the trial judge stated that the defendants had a right to rely upon the final judgment on the constitutionality of the ordinance in the earlier suit.
The district court held that the plaintiff was precluded from contending that the ordinance was unconstitutional, in spite of the fact that the defendant judges were not party to the prior litigation. A similar contention was made and disposed of by this court in Barnett v. Develle, 289 So.2d 129 (La.1974). That case involved the constitutionality, as conflicting with the civil service article of the constitution, of statutes conferring supplemental benefits to firemen. There we said at 289 So.2d 138:
"To the extent the exceptions of no cause of action are based on the ground that the issues herein have been previously litigated in Firefighters I, II and III, said exceptions are in the nature of exceptions of judicial estoppel, laches and res judicata. We will deal with this issue in our subsequent consideration of these latter exceptions.
An exception of no cause of action must be determined in the light of the well pleaded averments of plaintiff's petition, all of which must be accepted as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54."
In New Orleans Firefighters Assn. Local 632 v. City of New Orleans, 263 La. 649, 269 So.2d 194 (1972), we sustained a plea of res judicata because a prior judgment holding constitutional the statutes under attack had become final in a suit between the same parties. Then, in the Barnett case, where the civil service commission members, not the city, were the parties attacking the constitutionality of the legislation, we denied several exceptions, including exceptions of no cause of action, judicial estoppel and res judicata. Finding the parties not to be identical, we reversed and held the statutes unconstitutional.
"Judicial estoppel" was discussed in the Barnett case, and it was recognized that it, or a similar doctrine, had been applied in Louisiana. In the Barnett case we "declined to apply" a doctrine of estoppel which would prevent a constitutionally created agency from testing the validity of a statute when it had not been a party to the prior action in which the validity of the statute was sustained.
This court was squarely faced with the issue of collateral estoppel in Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La. 1978). We held the doctrine to be alien to Louisiana law and insusceptible to an orderly application here, not only because of a lack of uniformity of its application in common law jurisdictions, but because the words used in the common law jurisdictions to explain the doctrine have different meanings from the words used in Louisiana to explain our doctrine of res judicata. We said, at 359 So.2d 157:
"The introduction of collateral estoppel into our system would effectuate a change fundamentally different from that established by ancient legislation. By choosing to define res judicata in narrow terms, the legislators apparently concluded that the inconvenience caused by relitigation is outweighed by the injustice of perpetuating erroneous judicial decisions. The adoption and application of an issue preclusion device which would broaden the operation of res judicata in Louisiana would subvert the original ideal established by codes.
While this court has on occasion recognized collateral estoppel in our system of law, no clear understanding of the application of that doctrine has been developed in the cases or in legal literature.

*683 Therefore, we hold that none of the variations of the common law doctrines of res judicata apply in Louisiana."
Therefore, the exception of collateral estoppel is overruled.
On the merits of the case, the State contends that Ordinance 6265 M.C.S. as passed by the New Orleans City Council is unconstitutional because it conflicts with R.S. 13:691(C).
R.S. 13:691(C) provides:
"No judge whose salary is provided for herein shall receive for his services as a judge, directly or indirectly, any additional salary, compensation, emolument, or benefit from the state or any of its political subdivisions except (1) retirement benefits, (2) reimbursement of those expenses provided for and authorized by R.S. 13:694, 13:698, and 13:1341.2, (3) membership in group insurance programs, and (4) educational grants."
Ordinance 6265 M.C.S. provides in pertinent part:
"SECTION 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY ORDAINS, that each Judge of the Civil District Court, Criminal District Court and the Juvenile Court for the Parish of Orleans who is a member of the State Retirement Plan for Judges and Officers of the Court shall receive annually from the City of New Orleans as a retirement benefit allowance a sum of money equal to one half of the percentage of his annual salary as Judge which he must contribute each year toward his retirement plan for Judges as enacted by the Louisiana State Legislature by Act 518 of 1976 and approved August 5, 1976, amending Chapter I of Title 13 and adding a new part to be designated as Part II, and to comprise R.S. 13:11 through R.S. 13:26."
First, it has been argued and accepted on the basis of the rationale expressed in Swift v. State of Louisiana, 342 So.2d 191 (La.1977), that the statute is to be construed liberally. The reliance on the Swift decision is misplaced. In Swift liberal construction was given to legislation providing pension benefits, whereas the instant controversy involves a statute prohibiting additional compensation. The legislative intent in enacting 13:691(C) is clear: judges are to receive no additional compensation except that specified.
The city ordinance permits Orleans Parish judges to receive from the city an annual sum equal to one-half their annual contribution to the state employees retirement system, and calls the sum "a retirement benefit allowance." The court concluded that payment by the city of one-half the judges' contribution to the retirement system was a "retirement benefit" because such a liberal interpretation would not thwart the purpose of the act, in view of the other exceptions provided for in 13:691(C).
The other exceptions, which state or local governments are permitted to pay for or to judges, are: travel, hotel and office expenses, group insurance premiums, and educational grants. There are strong reasons to permit the reimbursement of certain expenses; contribution to group insurance premiums is a traditional and accepted fringe benefit in business and government; educational grants legitimately give rise to the expectation of improved performance in office. It would have been unusual and unexpected if the legislature had prohibited the continuation of such reimbursement of expenses and insurance and education programs. It would also have been unexpected (and unjust) for the legislature to have prohibited receipt by a judge of retirement benefits he might earn under a local system.
It would also have been unusual and unexpected in 1975 (when the new system of paying judges was enacted as 13:691) to interpret "retirement benefits" to include judges' contribution to a retirement system. Because the judicial retirement was not an actuarially funded system, and because judges did not make contributions to the system as did other state employees, the Constitution of 1974 directed the legislature to provide for a retirement system for judges. It was not until 1976 (R.S. 13:12 et *684 seq.) that the legislature provided that judges could be members in and contribute to the state employees retirement system.
It could have hardly been contemplated by the legislature, when it provided in 1975 that local governments would not be prohibited from paying "retirement benefits" to judges, that "retirement benefits" would be construed in 1977 to include part of the judges' cost of membership under the judges' retirement act of 1976. Even the Court of Appeal found such payments to be pay supplements, but found they were within the "retirement benefits" exclusion from the prohibition against pay supplements.
"Retirement benefits" can only be construed to mean an advantage of some kind received by a person under the provisions of a retirement system. The contribution of a member to the state employees retirement system is a cost to the member. It is not a benefit, but the price he pays to receive benefits. When the city pays part of that cost, it is surely a benefit to the judge, but not a retirement benefit, which is an advantage only obtainable from the retirement system under the statute.
We therefore hold Ordinance 6265 M.C.S. invalid and without force because it violates the prohibition of R.S. 13:691(C).
Accordingly, the ruling of the district court in Guste v. City of New Orleans (our No. 62246), sustaining the exception of res judicata is affirmed and the case is remanded to the district court for further proceedings in accordance with this opinion. The ruling of the district court in Guste v. Judges (our No. 62247), is affirmed insofar as it maintained the exception of res judicata as to Judge Shea, but reversed insofar as it maintained the exception of no cause of action as to all parties. The exception of collateral estoppel is overruled. The case is remanded to the district court for further proceedings in accord with the views expressed herein.
NOTES
[1] In 1977 C.C.P. 2166 and 2167 were amended respectively by Acts 179 and 180 of the Regular Session. Under the provisions of the new Article 2166, a judgment of a court of appeal becomes final and definitive if neither an application for rehearing to the court of appeal nor an application to the supreme court is filed timely. § 4 of Act 179 provides: "The effective date of this Section is January 1, 1978; the provisions hereof shall apply to all appeals in which the order of appeal is granted on or after the effective date hereof." The order of appeal in Guste v. City of New Orleans was granted prior to January 1, 1978.